Submitted on the record March 15, ballot titles certified May 25, 2004

Pat McCORMICK,
*Petitioner,*

*v.*

Hardy MYERS,
Attorney General,
State of Oregon,
*Respondent.*

(SC S51234, S51235, S51236, S51237,
S51238, S51239, S51240, S51241, S51242)
(Consolidated for Opinion)

91 P3d 704

James M. Brown, Salem, filed the petitions for petitioner.

Brendan C. Dunn, Assistant Attorney General, Salem, filed the answering memoranda for respondent. With him on the memoranda were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

DURHAM, J.

**DURHAM, J.**

The court has consolidated these nine ballot title challenges for decision. Petitioner challenges the ballot titles that the Attorney General certified for Initiative Petitions 135 through 143 (2004). He argues that the Attorney General's "yes" vote result statement for each ballot title fails to describe, simply and understandably, the result of approval of the proposed measure, as ORS 250.035(2)(b) requires. He also contends that the Attorney General's summary for each ballot title fails to present, concisely and impartially, a statement of not more than 125 words that summarizes the proposed measure and its major effect, as ORS 250.035(2)(d) requires.

We review the Attorney General's ballot titles for substantial compliance with statutory requirements. ORS 250.085(5). For the reasons set out below, we reject petitioner's arguments and certify the Attorney General's ballot titles.

The proposed measures share a common theme: they would abolish the State Accident Insurance Fund Corporation (SAIF) that the legislature created in ORS 656.751. The legislature created SAIF for the purpose, among other things, "of transacting workers' compensation insurance and reinsurance business." ORS 656.752(1). In addition to abolishing SAIF, the proposed measures would require the state to use SAIF assets to satisfy all obligations of SAIF.

The proposed measures, however, are not identical. Initiative Petitions 135 and 137 through 143 each would distribute 50 percent of SAIF's surplus assets, up to $150 million, to past and present SAIF policyholders. However, the proposed measures would require use of any remaining surplus assets for a variety of different purposes. Those purposes would include public education, local law enforcement programs, providing prescription medications for low-income senior citizens, and other purposes. Those proposed measures also would regulate the compensation of SAIF personnel and prohibit SAIF from hiring "any outside lobbyists."

Initiative Petition 136 similarly would require the state to use SAIF's assets and the Industrial Accident Fund to satisfy the obligations of SAIF and the fund. That proposed measure also would require that any remaining assets that are "not actuarially necessary to satisfy" those obligations be used "to promote job growth." However, that proposed measure would not regulate the compensation of SAIF personnel or attempt to restrict the hiring of lobbyists by SAIF.

The Attorney General's ballot titles reflect the substantial similarities as well as the difference in the wording of each proposed measure. For example, the Attorney General certified the following ballot title for Initiative Petition 135:

"ABOLISHES SAIF; REQUIRES STATE TO SATISFY SAIF'S OBLIGATIONS; DISTRIBUTES POTENTIAL SURPLUS TO POLICYHOLDERS AND SCHOOLS

"RESULT OF 'YES' VOTE: 'Yes' vote abolishes SAIF; requires state to satisfy SAIF's obligations; distributes potential surplus to policyholders, schools; caps SAIF's employees' compensation; prohibits outside lobbyists for SAIF.

"RESULT OF 'NO' VOTE: 'No' vote retains laws authorizing SAIF, a public corporation, to sell and administer workers compensation insurance and to administer an accident fund for that purpose.

"SUMMARY: State Accident Insurance Fund (SAIF) is a public corporation selling, administering workers compensation insurance, and administering accident fund for that purpose. Effective December 2005, measure abolishes SAIF. Requires state to assume authority over accident fund, and use fund and SAIF's assets to satisfy SAIF's obligations, including current obligations to SAIF policyholders. Requires giving 50 percent (not exceeding $150 million) of any surplus assets (meaning any SAIF assets or accident fund monies that are unnecessary to satisfy SAIF's obligations) to SAIF's past, present policyholders. Requires using remainder of any surplus assets for supporting schools (kindergarten through twelve). Effective January, 2005, requires compensating SAIF personnel at levels

equal to similar persons in other agencies; prohibits severance pay to SAIF employees; prohibits outside lobbyists for SAIF. Other provisions."

Petitioner asserts that the "yes" vote result statements and summaries for each ballot title are insufficient for the same reason. According to petitioner, those parts of the ballot titles are incomplete and potentially misleading, because they fail to disclose that the abolition of SAIF would mean that employers could satisfy their workers' compensation coverage obligation only through commercial insurance carriers or self-insurance. He argues that that result of the proposed measure's adoption is a fundamental change in Oregon law and is more important than other material that the Attorney General included, such as the references to employee compensation and hiring of lobbyists by SAIF.

Petitioner asserts correctly that every covered employer in Oregon has a statutory duty to "maintain assurance" with the state that its subject workers and their beneficiaries will receive compensation for compensable injuries, as provided by law, and that the employer will perform its duties and pay its obligations

"by qualifying:

"(a)   As a carrier-insured employer; or

"(b)   As a self-insured employer as provided by ORS 656.407."

ORS 656.017(1). In addition, we assume the correctness of petitioner's contention that many Oregon employers now obtain workers' compensation coverage through SAIF and that the abolition of SAIF would require those employers either to self-insure or to secure insurance coverage through other commercial insurers to satisfy their obligation under ORS 656.017(1).

The text of the proposed measures, however, does not mention the consequences to which petitioner alludes. Those consequences are, instead, the practical results of market forces that will come to bear if voters adopt any of the proposed measures. For purposes of our ballot title review, we believe that the repeated use of the words "abolishes SAIF" in the captions, "yes" vote result statements, and summaries

gives adequate notice to voters and petition signers that the proposed measures will remove SAIF from the insurance market. Thus, voters and petition signers will realize that the adoption of the proposed measures will compel SAIF's insured employers to satisfy their obligation under ORS 656.017(1) either through self-insurance or some other commercial insurer.[1]

We conclude from the foregoing that the Attorney General's "yes" vote result statements and summaries in the challenged ballot titles comply substantially with statutory requirements. Accordingly, we certify the Attorney General's ballot titles.

Ballot titles certified.

---

[1] The Attorney General points out that, in two earlier ballot title cases, *McCormick v. Myers,* S50967, and *McCormick v. Myers,* S50968, this court considered similar challenges to the ballot titles for two proposed measures that also would have abolished SAIF. The arguments in those cases resemble the arguments that petitioner asserts in these proceedings. This court rejected those challenges and, in brief orders, certified the Attorney General's ballot titles.